UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSANDRA LUXTON,

          Plaintiff,                     Case No. 1:15-cv-13758
                                       Judge Thomas L. Ludington
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 13) and GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 17)**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, Cassandra Luxton, brings this action under 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her application for disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

13), the Commissioner's cross motion for summary judgment (DE 17), and the administrative record (DE 11).

## A.    Background

Plaintiff filed her application for DI benefits on October 22, 2012, alleging that she has been disabled since July 29, 2012, at age 52.  (R. at 147-148.)  Plaintiff alleges disability as a result of degenerative disc disease, chronic pain, depression, bilateral knee arthritis, fibromyalgia, chronic bronchitis, asthma, problems with vision, dry eyes and migraines.  (R. at 162.)  Plaintiff's application was denied on February 25, 2013.  (R. at 67-85.)

On March 14, 2013, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 88-89.)  ALJ Kevin J. Detherage held a hearing on February 13, 2014, at which Plaintiff was represented by counsel.  (R. at 27-66.)  On March 25, 2014, ALJ Detherage determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-26.)

Plaintiff requested review of the hearing decision.  (R. at 7.)  On August 26, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Detherage's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on October 25, 2015. (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff alleges in the field office disability report that she has been disabled since July 29, 2012.  (*See* R. at 159-160.)  Her medical records span the period from February 23, 2012 to January 31, 2014.  (R. at 229-285 [Exhibits 1F-8F].)  Although the 57 pages of medical records are comprised mainly of treatment notes or records from Regis A. Benton, Jr., D.O. (R. at 229-248 [Ex. 1F], 267 [Ex. 6F], 268-284 [Ex. 7F] & 285 [Ex. 8F]), of particular importance are the consultative examination report of Siva Sankaran, M.D. (R. at 250-258 [Ex. 3F]), the consultative examination report of Nathalie Menendes, Psy.D. (R. at 259-264 [Ex. 4F]) and the medical statement of Dr. Benton (R. at 265-266 [Ex. 5F]).  These will be discussed as necessary below.

### C.    Hearing Testimony

ALJ Kevin J. Detherage conducted a hearing on February 13, 2014, at which Plaintiff and VE Delmar testified.  (*See* R. at 31-58, 59-64.)  As the instant appeal presents a limited challenge to the ALJ's credibility determination – that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . .[,]" or that "the preponderance of credible evidence establishes that the claimant experienced no greater than, at most, mild to moderate functional limitations upon her ability to perform basic work activities . . . ."  (R. at 16, 20) - I will forego further summary of the testimony for the time being and only mention it as necessary below.

3

**D.     The Administrative Decision[1]**

ALJ Detherage rendered his decision on March 25, 2014.  At **Step 1**, he determined that Plaintiff has not engaged in substantial gainful activity since July 29, 2012, the alleged onset date.  (R. at 13.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  lumbar degenerative disc disease, asthma, fibromyalgia, headaches, arthritis of the knees, obesity, and depression.  (R. at 13.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 13-16.)  At **Step 4**, the ALJ determined that Plaintiff had the RFC to perform unskilled, light work with certain

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

physical limitations (postural and environmental) and certain mental limitations (concentration and persistence and adaptation), and further found that Plaintiff is unable to perform any past relevant work.  (R. at 16-20.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 21.)

###   E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

5

Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    The ALJ's opinion is supported by substantial evidence.

At the outset, the Court wishes to comment on the frustrating form of Plaintiff's motion for summary judgment. Namely, while the "table of contents"

6

and single-capitalized argument appear to set forth the "issues presented" contemplated by E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs."), a close reading of the argument section's substance reveals fragments of several other sub-arguments.  (*See* DE 13 at 5, 10-19.)  This leaves the Court with a lack of clearly defined issues under its consideration.

In any event, although the single, capitalized assertion at the beginning of Plaintiff's argument section appears limited to challenging the ALJ's RFC determination and treatment of opinion evidence, the body of this argument reveals more specific challenges to the ALJ's evaluation of:  (1) the severe impairments under the listed impairments; (2) the treating physician's medical opinion; and, (3) the exertional and non-exertional limitations in the RFC, within which Plaintiff challenges (4) the ALJ's credibility assessment.  (DE 13 at 10-19.)  The Commissioner argues for affirmance, asserting that substantial evidence supports the ALJ's Step 3 findings, evaluation of the record medical opinion evidence, and physical and mental RFC findings.  (DE 17 at 10-27.)

### 1.     The ALJ's Step 3 determinations should be affirmed.

At Step II, the ALJ found that Plaintiff had several severe impairments, including lumbar degenerative disc disease, fibromyalgia and arthritis of the knees; nonetheless, at Step III, the ALJ found that Plaintiff's impairments or combination of impairments do(does) not meet or medically equal the severity of one of the

listed impairments.  (R. at 13.)  In particular, the ALJ concluded that Plaintiff's

bilateral knee arthritis and back impairment did not meet Listing 1.02(B) ("Major

dysfunction of a joint(s) (due to any cause)") or Listing 1.04 ("Disorders of the

spine").  As to each of these conclusions, the ALJ referred to forthcoming

discussion, presumably his Step 4 RFC determination.  (R. at 14.)

Plaintiff contends that the ALJ "never evaluates the Plaintiff's bilateral knee

problems or back impairment under the listings[,]" pointing to various treatment

notes from Dr. Benton (R. at 237 [Ex. 1F], R. at 267 [Ex. 6F], R. at 270, 275-277,

281 [Ex. 7F] & R. at 285 [Ex. 8F]) and the consultative examination of Siva

Sankaran, M.D. (R. at 253, 254 [Ex. 3F]).  (*See* DE 13 at 11-12.)    For example,

on several occasions, Dr. Benton's August 13, 2012 musculoskeletal examination

revealed palpation/tenderness in the lumbosacral spine and restricted range of

motion throughout the lumbar spine.  (R. at 237 [Ex. 1F].)  Likewise, Dr. Benton's

March 11, 2013, May 8, 2013, September 3, 2013 examinations revealed spinal

tenderness.  (R. at 270, 277, 281 [Ex. 7F].)  Also, Dr. Benton's June 18, 2013 letter

states that Plaintiff experiences "frequent falling due to leg weakness and knee

pain."  (R. at 267 [Ex. 6F].)  In addition, on January 31, 2014, Dr. Benton

prescribed a cane, seemingly due to falling and degenerative disc disease in the

knees.  (R. at 285 [Ex. 8F]).  Moreover, Dr. Sankaran's January 2, 2013

consultative examination revealed tenderness in the lumbar area, the presence of

muscle spasm, tenderness in the knee joints "with grating sensation felt[,]" and "trigger spots on the spine and shoulder areas."  (R. at 253-254 [Ex. 3F]).

Defendant argues that the record does not support a conclusion that Plaintiff meets or medically equals the listings at issue, further contending that the ALJ permissibly relied on state agency medical consultant, Natalie Gray, M.D.'s January 14, 2013 opinion.  (DE 17 at 10-14.)  Dr. Gray determined that Plaintiff's severe impairments included fibromyalgia, obesity and migraines (R. at 73) and that Plaintiff's physical RFC included certain exertional, postural and environmental limitations (R. at 75-77).

However, even if Plaintiff "cannot find any discussion with regards to the medical evidence in this decision as it relates to the listed impairments 1.02 or 1.04[,]" Plaintiff's recitation of Dr. Benton's and Dr. Sankaran's opinions is not the equivalent of illustrating to this Court how the evidence establishes that Plaintiff has met the various criteria of the listings at issue.  (DE 13 at 11-12).  As the Commissioner correctly noted, Plaintiff does not identify any of the objectively-supported medical findings identified in either Listing "that would support a 'meets' finding, or that the ALJ improperly failed to discuss[;]" the medical record in this case is "sparse" and "does not contain any of the relevant objective medically acceptable clinical or laboratory diagnostic technique evidence required for a finding that the requirements of these Listings are met[;]" and the

record does not support a finding of "medical equivalence" to either of the Listings at issue.  (DE 17 at 11-12.)  Thus, she has not met her relative burden.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").

### 2.      The ALJ properly evaluated the opinion evidence regarding her physical impairments.

Plaintiff takes issue with the ALJ's treatment of the opinion evidence as it relates to her physical impairments.  (DE 13 at 14-15.)  An ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[2] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

---

[2] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id*.

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice

of determination or decision for the weight [the ALJ] give[s] your treating source's

opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7

(6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals

for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### a.   Dr. Benton (treating physician)

On March 11, 2013, Dr. Benton opined that Plaintiff "must lay down for pain relief[,]" could never bend or stoop, was "occasionally" limited in balancing and needed to elevate her legs during the workday "most of [the] time[.]" (R. at 265.) On June 18, 2013, Dr. Benton wrote that Plaintiff needed "to l[ie] down frequently to control pain and frequent falling due to leg weakness and knee pain." (R. at 267.) The ALJ assigned "moderate weight" to these opinions, "to the extent that it shows that the claimant can occasionally perform postural activities[.]" (R. at 19.) The ALJ then included in the RFC the postural limitations of occasional stooping, kneeling, crouching and crawling; never climbing ladders, ropes or scaffolds; but occasionally climbing ramps and stairs. (R. at 16.)

On the other hand, the ALJ assigned "little weight" to Dr. Benton's opinion, "to the extent that it shows that the claimant is unable to work," – presumably a reference to Dr. Benton's June 18, 2013 statement that Plaintiff "is disabled from her job . . ." - as it "is not supported by the medical evidence of record[,]" and "the record does not show that the claimant has any weakness in her lower extremities." (R. at 19-20, 267.) As to this sentence, Plaintiff notes that Dr. Benton documented Plaintiff's need to elevate her legs "most of time" during the workday; "chronic

pain of the bilateral knees due to arthritis[,]" "leg weakness," and "knee pain[,]" and issued a prescription for a cane, the latter of which was given two weeks before her February 2014 hearing.  (DE 13 at 12, 14, 15, R. at 265, 267, 285.)  Moreover, Plaintiff points out that consultative examiner Dr. Sankaran's January 2, 2013 report notes, "[k]nee joints are tender with grating sensation felt."  (DE 13 at 12, 14, 253.)  However, I note that, as to "reflexes of affected extremity," Dr. Sankaran rated Plaintiff's upper and lower, left and right extremities as "normal." (R. at 255.)

Nonetheless, the ALJ expressly considered Dr. Benton's March 2013 opinion about leg elevation.  (R. at 19, 265.)  Furthermore, the ALJ took into consideration consultative examiner Dr. Sankaran's January 2013 notes regarding leg aches and knee pain, negative straight-leg raising test, and that Plaintiff apparently reported that she "does not use a cane or walker."  (R. at 17-18, 252-254).  This is in contrast to function reports filled out by Plaintiff and her daughter-in-law on November 30, 2012, in which they each checked off the box for "cane" use, putting Plaintiff's credibility at issue.  (R. at 179, 190.)  Dr. Sankaran further opined that Plaintiff was able to perform a host of "current abilities," such as sitting, standing, bending, stooping, carrying, pushing and pulling.  (R. at 255.)  The ALJ assigned "moderate weight" to this opinion, explaining that Dr. Sankaran

14

"was able to thoroughly examine the claimant and witness several of these activities being performed."  (R. at 19, 255.)

Thus, whatever inaccuracy Plaintiff believes exists in the ALJ's statement that the record does not evidence weakness in the lower extremities, the ALJ clearly considered Plaintiff's lower joint pain and limitations, and further considered any *contradictions* in the record with regard thereto.  Any error in how the ALJ summarized the record was harmless.  As to Dr. Benton's opinion that Plaintiff was "disabled from her job," the ALJ considered the supportability factor of 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) and permissibly discounted Dr. Benton's opinion, based upon the overall record, as discussed herein. (See R. at 19-20, 267.)  Moreover, "[s]uch disability determinations are reserved for the Commissioner and therefore are not given 'any special significance.'"  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) (citing 20 C.F.R. § 404.1527(e)(1),(3)).

### b.    Dr. Gray (state agency medical consultant)

State agency medical consultant Natalie Gray, M.D., determined that Plaintiff was able to perform the exertional limitations of "light work."  In other words, Plaintiff could:  occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of approximately 6 hours in an 8-hour workday; and sit for a total of approximately 6 hours in an 8-hour

workday.  In support of these exertional limitations, Dr. Gray cited Plaintiff's fibromyalgia and obesity.  (R. at 75-76, 80; 20 C.F.R. § 404.1567(b).)[3]

As the regulations provide:  "[A]dministrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled[.]"  20 C.F.R. §§ 404.1527(e)(2)(i).  The ALJ did so here, noting that Dr. Gray's January 14, 2013 opinion concludes that Plaintiff "is able to perform a modified range of light exertional work."  (R. at 19, 75-77.)  Moreover, the ALJ assigned "great weight" to Dr. Gray's opinion, noting that Dr. Gray "was able to review most of the record before issuing her opinion, which is consistent with the medical evidence above."  (R. at 19, 75-77 [Ex. 2A]).  Thus, the ALJ considered the consistency factor of 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Plaintiff specifically takes issue with the ALJ's assignment of "great weight" to Dr. Gray's opinion, as she was neither a treating nor an examining physician. (DE 13 at 15.)  However, the regulations provide for consideration of opinions by nonexamining sources:

_____

[3] "Light work involves *lifting no more than 20 pounds* at a time with *frequent lifting or carrying of objects weighing up to 10 pounds*.  Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing*, or when it involves *sitting most of the time* with *some pushing and pulling of arm or leg controls*. . . ."  20 C.F.R. § 404.1567(b) (emphasis added).

> In appropriate circumstances, opinions from State agency medical and
> psychological consultants and other program physicians and
> psychologists may be entitled to greater weight than the opinions of
> treating or examining sources. For example, the opinion of a State
> agency medical or psychological consultant or other program
> physician or psychologist may be entitled to greater weight than a
> treating source s medical opinion if the State agency medical or
> p[s]ychological consultant's opinion is based on a review of a
> complete case record that includes a medical report from a specialist
> in the individual's particular impairment which provides more detailed
> and comprehensive information than what was available to the
> individual's treating source.

SSR 96-6P (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

In assigning Dr. Gray's opinion "great weight," the ALJ acknowledged that Dr.

Gray was a state agency reviewing physician whose opinion was consistent with

the medical evidence. (R. at 19.) Thus, in considering Dr. Gray's opinion, the

ALJ expressly considered the factor set forth in 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2) ("Treatment relationship.") and implicitly considered the factor set

forth in 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Consistency."), which will

be discussed in further detail below.

Plaintiff also takes issue with the ALJ's statement that Dr. Gray was able to

review "most of the record before issuing her opinion . . . ." (R. at 19, DE 13 at

15.) As Plaintiff mentions, Dr. Gray's January 14, 2013 opinion would not have

taken into consideration Dr. Benton's March 11, 2013 medical statement (R. at

265-266 [Ex. 5F]), Dr. Benton's June 18, 2013 treatment notes (R. at 267 [Ex.

6F]), Dr. Benton's March 11, 2013 to September 3, 2013 office treatment records

(R. at 268-284 [Ex. 7F]) or Dr. Benton's January 31, 2014 office treatment records (R. at 285 [Ex. 8F]).  And, to the extent Plaintiff contends that Dr. Gray "missed many of the medical records demonstrating that Plaintiff's medical condition had worsened to the point she was unable to ambulate without the assistance of a cane[,]" she notes that Dr. Benton's March 11, 2013 medical statement documents Plaintiff's limitations on standing to 15 minutes at one time, on sitting to 15 minutes at one time, on lifting to 5 pounds occasionally and on lifting to 0 pounds frequently, and further documents severe pain and a need to elevate legs during the workday "most of time."  (R. at 265-266 [Ex. 5F]).

To be sure, the ALJ's decision does not expressly reference either Dr. Benton's office treatment records from March 11, 2013 to September 3, 2013 (R. at 268-284 [Ex. 7F]) or Dr. Benton's office treatment record from January 31, 2014 (R. at 285 [Ex. 8F]).  However, failure to expressly mention the January 31, 2014 cane prescription within the ALJ's March 25, 2014 decision is cured by the ALJ's clear acknowledgment and consideration of the cane at the hearing and the related February 13, 2014 testimony about its use.  (R. at 30, 55-57, 64, 285 [Ex. 8F].)  Also, any omission of Dr. Benton's notes from 2013 about spinal tenderness is cured by the ALJ's acknowledgement of same in Dr. Benton's notes from 2012 and Dr. Sankaran's notes from 2013.  (R. at 17-18, 237 [Ex. 1F], 253 [Ex. 3F], 270, 277, 281 [Ex. 7F]).

18

Furthermore, an ALJ is not required to specifically mention each and every medical record in his or her opinion, so long as it is clear that the entire record was considered. *Tracy v. Comm'r of Soc. Sec.*, No. 1:12CV588, 2013 WL 3287113, at *7 (S.D. Ohio June 28, 2013) ("The ALJ need not cite to every single medical record, when it is clear that all relevant records have been considered."). Here, it is clear. In fact, colloquy between the ALJ and counsel at the end of the hearing demonstrates that the ALJ mentioned having records through September 2013, acknowledging that a cane had since been prescribed. (R. at 64-65.) Claimant and her counsel indicated that the subsequent treatment by Dr. Benton was essentially more of the same and that it was not absolutely necessary to have the record open for supplementation (R. at 64-65); nevertheless, the ALJ dutifully obtained and included the recent cane prescription from her treating physician. (R. at 285.) It is accordingly evident that the ALJ based his decision on a complete record, and for the reasons stated above and below, his opinion was based on substantial evidence.

Importantly, the Social Security Ruling (SSR), which comments upon "consideration of administrative findings of fact by state agency medical and psychological consultants" provides, in part:

> . . . the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are *supported by evidence in the case record*, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not

before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6P (S.S.A. July 2, 1996) (emphasis added). "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6P). As will be illustrated in the following section, the ALJ's determination that Plaintiff has the RFC to perform the exertional limitations of light work is supported by record evidence.

### c.   The ALJ provided "good reasons" for his assignment of weight.

As noted above, the ALJ provided good reasons for the relative assignments of weight to the opinion evidence, referencing the supportability, consistency and treatment relationship factors contemplated by 20 C.F.R. §§ 404.1527, 416.927.[4] For this reason, the ALJ's assignment of "moderate" and "little weight" to the

---

[4] Although these are factors applied to treating sources – and Dr. Gray was indisputably not a treating source, but, rather, a state consultant – the application of this framework is logical and by no means inappropriate here.

opinion(s) of Dr. Benton and "great weight" to the opinion of Dr. Gray should be left undisturbed.

### 3.   Substantial evidence supports the ALJ's determination that Plaintiff's RFC includes certain physical and mental limitations.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P (S.S.A. July 2, 1996).  Plaintiff contends that "the ALJ never complied or even attempted to reconcile [SSR] 96-8p with his decision."  (DE 13 at 19.)  For the reasons that follow, the Court should disagree.

### a.   Physical RFC limitations (exertional, postural and environmental limitations)

Plaintiff contends that the ALJ erred in his evaluation of Plaintiff's exertional limitations.  (DE 13 at 11, 19.)  By way of background, *exertional limitations* include lifting, carrying, standing, walking, sitting, pushing and pulling. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b).  *Postural limitations* include climbing, balancing, stooping, kneeling, crouching and crawling, while *environmental limitations* include extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards.  (*See* R. at 76-77 [Ex. 2A].)

As previously noted, the ALJ determined at Step 4 that Plaintiff was **(i)** exertionally limited to light work; **(ii)** posturally limited to "occasionally stoop, kneel, crouch, and crawl[,]" "never climb ladders ropes or scaffolds," and "occasionally climb ramps and stairs[;]" and **(iii)** environmentally limited to avoid "exposure to hazards, such as heights or machinery with moving parts[,]" and avoid "concentrated exposure to dust, fumes, gases, [odors], or poorly ventilated areas[.]" (R. at 16.) In addition, the ALJ concluded that state agency reviewing physician Dr. Gray's physical RFC assessment was consistent with "a modified range of light exertional work[,]" and assigned "moderate weight" to treating physician Dr. Benton's March 11, 2013 medical statement and June 18, 2013 letter "to the extent [these show] that the claimant can occasionally perform postural activities[.]" (R. at 19, 75-77, 265, 267.)

Specifically, Plaintiff argues that the ALJ "makes obvious omissions from the RFC[,]" contending that **(i)** although the ALJ discussed Plaintiff's fibromyalgia, he did not evaluate her symptoms or her significant joint pain under SSR 12-2p and **(ii)** the ALJ's "failure to consider balance and the Plaintiff's use of a cane and leg brace . . . is significant legal error." (DE 13 at 13, 16). However, the Court should conclude that the ALJ properly accounted for each of these physical conditions. First, the January 31, 2014 prescription for a cane was discussed during the hearing. (R. at 30, 64, 285.) Second, the ALJ found that

Plaintiff's severe impairments included lumbar degenerative disc disease, fibromyalgia and arthritis of the knees.  (R. at 13.)  Third, the ALJ acknowledged key pieces of key evidence, such as:

- Treating physician Dr. Benton's October 16, 2012 notes that Plaintiff's history included fibromyalgia and was accompanied by a host of symptoms.  (R. at 17, 232.)

- Plaintiff's January 2, 2013 representation to consultative examiner Dr. Sankaran that Plaintiff was diagnosed with fibromyalgia and experiences "generalized body aches, particularly affecting the spine and shoulders, back and legs." (R. at 17, 252.)

- Plaintiff's January 2, 2013 representation to consultative examiner Dr. Sankaran that "[s]he does not use a cane or walker."  (R. at 17, 252.)

- Treating physician Dr. Benton's March 11, 2013 opinion that Plaintiff is limited to balancing "occasionally."  (R. at 19, 265.)[5]

Finally, the ALJ expressly set forth his reasons for including the above-mentioned exertional, postural and environmental limitations:

> Due to the claimant's physical impairments, I limited her to work at the light *exertion level*.  Because of her purported pain, falling history, and obesity, I limited the claimant's *postural activities*.  I limited the claimant's *exposure* to hazards due to her obesity, fibromyalgia, headaches, asthma, and purported pain.  Further, because of her asthma, and limited her *exposure* to pulmonary irritants.

---

[5] As to the "leg brace" omission she identifies as a "significant legal error," (DE 13 at 16), Plaintiff fails to point to any particular medical record supporting such a claim, and the Court is not aware of any.  It is not the Court's responsibility to comb through the record to find such a reference, particularly where Plaintiff is represented by counsel.

(R. at 18 (emphasis added).)  Thus, the Court should conclude that the ALJ's determination that Plaintiff has the RFC to perform the exertional requirements of light work with the foregoing postural and environmental limitations is supported by substantial evidence.

> **b.**     **Mental RFC limitations (sustained concentration and persistence, adaptation)**

Plaintiff also challenges the ALJ's assessment of her mental or non-exertional limitations.  (R. at 11, 16-17.)  "When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."  20 C.F.R. §§ 404.1545(c), 416.945(c).

As noted earlier, the ALJ concluded at Step 2 that Plaintiff had the severe mental impairment of depression.  (R. at 13.)  At Step 4, the ALJ determined that Plaintiff's RFC included certain mental limitations, specifically Plaintiff is:  **(i)** limited to unskilled work; **(ii)** "unable to perform production rate pace work," which is a "sustained concentration and persistence" limitation; and **(iii)** Plaintiff can tolerate "only occasional changes in a routine workplace setting[,]" which is an

"adaptation" limitation.  (R. at 16, 77-79.)  The ALJ included these three

limitations to account for Plaintiff's "no more than moderate difficulties in

concentration, persistence, and pace [CPP]."  (R. at 18.)  In addition, the ALJ

assigned "great weight" to the mental RFC assessment of state agency

psychological consultant Wayne Hill, Ph.D. (R. at 77-79) and "moderate weight"

to the consultative examination report of Nathalie Menendes, Psy.D. (R. at 259-

264).  (R. at 19.)[6]

By way of background, state agency reviewing psychologist Wayne Hill,

Ph.D. concluded that Plaintiff has moderate restriction of activities of daily living,

moderate difficulties in maintaining social functioning, and moderate difficulties in

maintaining concentration, persistence or pace.  (R. at 73-74.)  Relatedly, Dr. Hill's

---

[6] Nathalie Menendes, Psy.D. performed a consultative examination on January 28,
2013.  (R. at 260-264 [Ex. 4F].)  In sum, she noted:  "Based on today's exam, the
claimant is able to perform simple and one-step tasks.  She is able to understand
and follow simple and one-step instructions.  She does not have any documented
intellectual deficits.  She is able to perform tasks such as activities of daily living
and appears to be the only person who takes care of chores in the home.  However,
she feels that her physical limitations and pain would prevent her from completing
a lot of different job duties.  Further, she is experiencing significant symptoms of
depression which would also interfere with her ability to complete work tasks on a
consistent and reliable basis.  Her social skills are fair, though she would likely
have difficulty interacting with others in times of stress."  (R. at 263.)  The ALJ
acknowledged this portion of Dr. Menendes's report and assigned it "moderate
weight" to the extent that "it shows that the claimant has difficulties concentrating
and finishing tasks."  (R. at 19.)  However, the ALJ further determined that "the
evidence, including the doctors on examination of the claimant, does not show that
the claimant would not be consistent or reliable enough for work activity."  (*Id.*)
Plaintiff does not seem to challenge the ALJ's assignment of weight to or treatment
of this opinion; thus, it is not discussed further.

mental RFC assessment included limitations in "concentration and persistence,"
"social interaction," and "adaptation," ultimately noting that Plaintiff retains the
RFC "to perform simple, rote tasks on a sustained basis."  (R. at 77-79.)  The ALJ
assigned this opinion "great weight," explaining that "it is consistent with the
limited record of the claimant's mental impairment."  (R. at 19.)

Plaintiff seems to contend that the ALJ committed "significant legal error"
by assigning non-examining Dr. Hill's assessment "great weight" but not
incorporating each of its limitations into the RFC, which, in turn, casts doubt upon
the accuracy of the hypothetical posed to the VE.  (DE 13 at 16-17.)  Here, I note
that the state agency reviewer's assessment of the "B" criteria of the listings is
somewhat different that the conclusions reached by the ALJ – namely Dr. Hill
opined that Plaintiff was *moderately restricted* in activities of daily living and had
*moderate difficulties* in maintaining social functioning, while the ALJ concluded
that Plaintiff had only *mild restriction* or *mild difficulties* in these same areas;
however, as to the non-exertional limitation at issue here – "concentration,
persistence or pace" (CPP) – Dr. Hill and the ALJ each reached the conclusion that
Plaintiff had *moderate difficulties*.  (*Compare* R. at 73, 14-15.)

Nonetheless, the Court should conclude that the ALJ's mental RFC
adequately addresses Plaintiff's mental conditions.  Plaintiff's challenge to the
ALJ's assessment of her non-exertional limitations seems to argue both that the

ALJ's limitation of "unskilled work" does not appropriately address her severe

mental impairment of depression and her moderate limitations in CPP (R. at 13,

15, 16, 18) and that the ALJ has not appropriately addressed what Dr. Hill opined

were "moderate" restrictions in activities of daily living, maintaining social

functioning, and maintaining CPP.  (R. at 14, 15).  (DE 13 at 16-17; *see also* R. at

73, 78.)  Yet, examination of the ALJ's decision reveals that "unskilled work" was

not the only "non-exertional" or "mental" limitation imposed by the ALJ.  For

example, the ALJ acknowledged Plaintiff's November 30, 2012 function report,

where she indicated that she was "not good with changes in routine."  (R. at 15,

190.)  Also, the ALJ noted:  "Additionally, the medical evidence of record does not

reveal that the claimant has a residual disease process that has resulted in such

marginal adjustment that even a minimal increase in mental demands or changes in

the environment would be predicted to cause the claimant to decompensate."  (R.

at 15.)  Ultimately, as noted above, the ALJ determined that Plaintiff is limited to

"unskilled work not performed at a production rate pace with only occasional

changes in the routine workplace setting."  (R. at 18; *see also* R. at 16.)  This

determination is based upon substantial evidence and consistent with the evidence

and opinions of record.

Although Plaintiff cites  Dr. Hill's opinions as to the "B" criteria of the

listings and lists the details of Dr. Hill's opinions regarding the CPP and social

interaction limitations set forth in Dr. Hill's mental RFC assessment (DE 13 at 16-17; *see also* R. at 73, 77-78), Plaintiff has not shown how the three non-exertional / mental limitations (unskilled work, non-production rate and only occasional changes in a routine workplace setting) included in the RFC fail to address Plaintiff's conditions and their related symptoms; thus, she has not met her relative burden. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").

### 4.    The ALJ properly discounted Plaintiff's credibility in accordance with 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (R. at 16.) Here, Plaintiff argues that the ALJ "never discusses or evaluates Ms. Luxton's subjective complaints . . ." under 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). (DE 13 at 18.) The Court should conclude otherwise.

At Step 3, the ALJ concluded that Plaintiff has mild restriction in activities of daily living. (R. at 14-15.) In so doing, the ALJ relied upon both Plaintiff's November 30, 2012 function report (R. at 181-191 [Ex. 4E]) and Plaintiff's February 13, 2014 hearing testimony (R. at 27-66). At Step 4, the ALJ relied upon

consultative psychologist Dr. Menendes's observations on activities, as self-reported by Plaintiff.  (R. at 18, 262 [Ex. 4F].)  Thus, the ALJ considered Plaintiff's daily activities.  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

At Step 3, the ALJ concluded that Plaintiff has moderate difficulties with regard to concentration, persistence or pace, specifically referring to her testimony that "she has difficulty remembering things and trouble keeping her train of thought due to side effects from her medication."  (R. at 15.)  Consistent with this observation by the ALJ, Plaintiff testified that her medication makes her "fuzzy," "foggy headed," and "sleepy," and has effects on her memory and concentration.  (R. at 45, 58.)  In addition, at Step 4, the ALJ relied upon Dr. Sankaran's notes as to the effect of Plaintiff's medications upon her symptoms.  (R. at 17, 251-252.)  Thus, the ALJ considered the effectiveness and side effects of Plaintiff's medications.  20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

The ALJ also considered Plaintiff's claims of pain and what she does to relieve it.  For example, within his Step 4 RFC determination, the ALJ considered: **(a)** Plaintiff's representations to Dr. Benton that "[s]ymptoms are made worse by walking, climbing stairs, exercise, bending, lifting and direct pressure" and that she has "widespread pain" associated with fibromyalgia (R. at 17, 235, 232); **(b)** Plaintiff's representation to consultative examiner Dr. Sankaran that Plaintiff received injection treatment which helped her knee pain and Dr. Sankaran's

29

observation that Plaintiff was "unable to touch her toes and unable to squat completely, complaining of knee pain[,]" (R. at 17, 252, 253.); and, **(c)** Dr. Benton's assessment that Plaintiff would need to elevate her legs for "most of [the] time" during the workday (R. at 19, 265).[7]  The ALJ also considered Plaintiff's need to lie down, as evidenced by her testimony that she "can't stay standing for more than 10 or 15 minutes at a time, and [has] to lay down from hurting[,]" (R. at 16, 36); her report to Dr. Sankaran that "[m]ost of the day she sits around or lies down . . .[;]" (R. at 17, 252); and Dr. Benton's opinion that Plaintiff "is disabled from her job due to her need to lay down frequently to control pain and frequent falling due to leg weakness and knee pain[,]" (R. at 19, 267 [Ex. 6F]).  Thus, the ALJ considered criteria set forth in 20 C.F.R. §§ 404.1529(c)(3)(ii),(vi), 416.929(c)(3)(ii),(vi).

As the ALJ explained, Plaintiff's RFC "is not based upon [her] being pain-free, but rather is based on her ability to do work activities on a sustained basis despite limitations, such as pain, from her impairments."  (R. at 18.)  This is not inconsistent with Sixth Circuit jurisprudence, which instructs that "[a] man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain." *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967).  Indeed, the law does not entitle a person to a disability finding just

---

[7] In addition, I note Plaintiff's testimony that, when she is sitting, she needs her legs elevated, "because my legs hurt so bad . . . ."  (R. at 55.)

because she is not utterly pain free. *Brown v. Comm'r of Soc. Sec.*, No. 1:13-CV-99, 2015 WL 404368, at *7 (W.D. Mich. Jan. 29, 2015) ("the claimant's residual functional capacity is not based on the claimant being pain-free, but rather based on his ability to do work activities on a sustained basis despite limitations, such as pain, from his impairments.").

Furthermore, as here, "[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In the case at bar, the ALJ appropriately noted that Plaintiff's daily activities include making simple meals, washing some dishes, and performing personal care (albeit with some difficulty). (R. at 14, 185-186; *see also* R. at 37, 50.) The ALJ further acknowledged that Plaintiff does not need any special reminders to take care of her personal needs and grooming, and she does not need help or reminders taking her medication. (R. at 14-15, 186.) In addition, the ALJ noted that Plaintiff can sweep, do laundry, and shop (although I note Plaintiff's explanation that her "son and/or daughter-in-law drive [her] and carry everything for [her]."). (R. at 15, R. at 186-187; *see also* R. at 50.) His conclusion that these activities reflect only mild restrictions is logical, and his discounting of her credibility, based upon her claim of being more restricted than is evident - not to mention the inconsistency about her cane use, as discussed above - is clear to this reviewer.

The ALJ in this case clearly performed a proper analysis by considering several of the factors outlined in 20 C.F.R. § 404.1529(c)(3).  Moreover, "'[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis.'"  *Maralason v. Comm'r of Soc. Sec.*, No. 15-CV-11666, 2016 WL 5405302, at *8 (E.D. Mich. Sept. 28, 2016) (quoting *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases)).  Having considered these factors, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (R. at 16.)  This credibility finding was well-supported and well-reasoned, and the standard of review requires that it be given deference.

### G.    Conclusion

I conclude that:  **(a)** the ALJ's Step 3 findings should be affirmed; **(b)** the ALJ properly evaluated the opinion evidence in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c); **(c)** substantial evidence supports the ALJ's determination that Plaintiff's RFC includes certain physical and mental limitations; and **(d)** the ALJ properly discounted Plaintiff's credibility in accordance with 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 13), **GRANT**

Defendant's motion for summary judgment (DE 17), and **AFFIRM** the

Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: October 26, 2016          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 26, 2016, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti